BREWER V. STAPLES and others.

THE purchaser of land which is conveyed to him subject to a mortgage executed by the vendor, is not entitled to the benefit of a collateral security which the vendor placed with the mortgagee subsequent to the execution of the mortgage.
After such a conveyance, the land becomes the primary fund for the payment of the mortgage debt, and the personal liability of the mortgagor is the secondary fund. The mortgagor stands, in respect of the land, as a surety for the mortgage debt. ·
A creditor taking from his debtor in compromise and satisfaction, a conveyance of land subject to a mortgage thereon, ceases to be a creditor, and becomes a purchaser of such land ; and he cannot compel the debtor to pay the mortgage.
S. having mortgaged his lands to B., subsequently transferred to B., a debt against Q. as a collateral security. Afterwards, S. being largely indebted to T., compromised the debt for less than its amount, and paid it by conveying to T. the same lands, expressly subject to the mortgage to B. *Held*, that T. had no right to require B. to collect Q's debt, and apply it to the satisfaction of the mortgage ; that the land was the primary fund ; and that S. could require B. to exhaust it before resorting to Q's debt, which was collateral to the mortgage.

April, 6 ; June 1, 1846.

THE bill was filed January 20, 1845, against William J. Staples, The Trust Fire Insurance Company, and others, to foreclose a mortgage executed by Staples to James H. Titus, on four lots of ground at Stapleton on Staten Island. The mortgage was dated September 15, 1846, was for $1500, and was accompanied by Staples's bond of the same date and tenor. Titus assigned the bond and mortgage to the complainant, prior to April, 1840, and she claimed $1200, of the principal to be due.

At the date of this mortgage, Staples executed a bond and mortgage to one Thurston, on five lots adjacent to the former; and Thurston assigned his bond and mortgage to Peter Embury. On the third day of April, 1840, for the further security of the debts to the complainant and Embury respectively, Staples assigned to E. Seeley, Esq. in trust for them, and as collateral to those debts, a bond and mortgage which he held, executed by one Quin. In 1841, Seeley foreclosed the Quin mortgage in chan-

cery, and in behalf of the parties interested in it, bid off the mortgaged premises at the master's sale, for $780. But the sale was never consummated, nor any deed given.

Staples being largely indebted to The Trust Fire Insurance Company, negotiated a settlement and compromise of the debt, offering lands in payment. Before effecting an arrangement, he proposed to add to his offer, the nine lots mortgaged to Titus and Thurston, subject to those mortgages. The compromise was finally made on that footing, and on the 29th day of May, 1843, Staples conveyed to the company, together with other lands, the nine lots before mentioned, subject to the respective mortgages thereon, viz., that to Titus on four, and the mortgage to Thurston on the remaining five; upon which the company discharged their demands against Staples. The lands conveyed by him, after deducting incumbrances, were not worth as much as his debt to the company. And at the time the testimony was taken in this suit, the deficiency exceeded the amount of Quin's mortgage.

The Trust Fire Insurance Company put in an answer to the bill, setting up most of these facts, and insisting that the complainant was bound to exhaust the security afforded to her by the Quin mortgage, before selling the four lots mortgaged by Staples to Titus. The bill was taken as confessed against all the other defendants. The cause was heard on the pleadings and proofs, as to The Trust Fire Insurance Company.

*A. C. Bradley*, for the complainant, made the following points.

1. The defendants, the Trust Fire Insurance Company, purchased subject to the mortgage in suit.

2. The assignment of the Quin mortgage to Mr. Seeley, was as collateral security merely.

3. The transaction, called a sale of the premises described in the Quin mortgage, even though it be not wholly void for non compliance with the statute of frauds, left the premises collateral still. It merely changed the form of the trust, without changing its nature. It was clearly no payment.

4. The purchase by the defendants, The Trust Fire Insurance Company, subject to the mortgage now in suit, was no purchase

of the collaterals assigned by Staples as security for that mortgage. In these, the Ins. Co. acquire no interest, even as against Staples, certainly none as against the complainant. They took the land subject to the whole incumbrance of the mortgage. They can avail themselves of no defence to the mortgage, which Staples could not have interposed. And he could not insist that the transaction relative to the Quin mortgage, was any payment of the one now in suit. (*Duke of Cumberland* v. *Coddington,* 3 J. C. R. 229.)

5. The Trust Fire Insurance Company ask the court to make for them a new and better bargain, than they have made for themselves. Their rights are to be measured by the bargain they have made.

6. Even if the court could under any circumstances, grant the relief they ask, it cannot be done in the present state of the cause, even if in this cause at all. Their controversy is with Staples, and not with Miss Brewer.

7. The company must pay costs.

*G. N. Titus,* for the defendants, The Trust Fire Insurance Company.

*First Point.* The Trust Fire Insurance Company, are entitled in equity to have a credit allowed upon the complainant's bond and mortgage, to the amount of $390, as of the 5th day of November, 1841, or to have the premises described in the Quin mortgage sold at the expense of the defendant Staples, or of Mr. Seeley the purchaser in 1841, and have the proceeds applied towards the payment of the bond of the complainant, and the bond of $1500 given by said Staples to Thurston, before the land now owned by the Trust Fire Insurance Company shall be sold for the payment of the complainant's debt.

1st. Mr. Seeley is bound to complete his purchase, either on his own account, or on account of the complainant and the holder of the Thurston bond and mortgage, or on the account of the defendant Staples. The creditors of Mr. Staples had nothing to do with the secret arrangement of the parties, in relation to the bidding at the sale.

2d. The purchase of Mr. Seeley by the direction of the holders

of the two bonds and mortgages above mentioned, was *per se* a satisfaction of those bonds to the extent of the bid. The defendants, The Trust Fire Insurance Company insist, that such credit should be allowed as against them in this suit.

*Second Point.* The Trust Fire Insurance Company insist that the complainant is equitably bound to resort to the Quin mortgage, and exhaust it, to obtain payment of her bond, before she shall be permitted to resort to the lands conveyed by Staples to them on account of their demand against him. Equity will compel her resort to the Quin mortgage in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties. (Story Eq. Jurisprudence, 647, 648, § 633, and cases cited in notes; *Evertson* v. *Booth,* 19 Johns. 486; *Hayes* v. *Ward,* 4 J. C. R. 123.)

*Third Point.* The Trust Fire Insurance Company are at all events entitled to have a decree that the complainant's interest in the Quin mortgage, together with the proceedings for the foreclosure thereof, including the decree of sale, and all the subsequent proceedings thereon, shall be assigned to them or for their benefit, or that they shall be permitted to enforce the execution of that decree, upon the payment of the complainant's bond. ( *Woolcock* v. *Hart,* 1 Paige R. 185; *Wright* v. *Nutt,* 3 Bro. C. C. 270.)

*Fourth Point.* The complainant is not entitled to the costs of this suit against the land of these defendants. If awarded to her at all, it should be against the defendant Staples, personally.

*Fifth Point.* These defendants are entitled to their costs in the defence of this suit. The complainant has volunteered to prosecute this suit, at the request and for the benefit of Mr. Staples. If she is charged with costs, she will be entitled to recover them from him.

THE ASSISTANT VICE-CHANCELLOR.—The validity of the claim made by The Trust Fire Insurance Company to have the complainant give to them the benefit of the Quin mortgage, depends upon their right as between themselves and Staples, to compel the application of the Quin mortgage towards the discharge of the complainant's debt. This point necessarily arises

between the complainant and the Trust Fire Company, although in the present state of the pleadings, it cannot be decided as between the latter and Staples.

On the 29th of May, 1843, when Staples conveyed the Staten Island lots to the Trust Fire Company, he was the owner of the lots, subject to the mortgage to the complainant on which $1200 was due, and to another mortgage executed to one Thurston for $1500. Both of these mortgages were given in 1836, and were accompanied by the bonds of Staples.

At the same date, Staples was the owner of the Quin mortgage, or rather of the surplus therein, he having assigned it in 1840 to Mr. Seeley, as security for the payment of the two bonds to the complainant and to Thurston, and to be re-assigned to Staples on payment of those bonds.

Thus the complainant and Thurston were mortgage creditors of these lots and of Staples, and they by their trustee, Mr. Seeley, held the Quin mortgage as a security for the same debts. Staples was their primary debtor, the lots were their first security, and the Quin mortgage was their second, or collateral security.

At the same date first mentioned, Staples was the debtor of the Trust Fire Company, in a sum which he alleged he was unable to pay, and he had proposed a compromise of the debt; and after some negotiation, a compromise had been agreed upon, by the terms of which these lots were to be conveyed to the Trust Fire Company, subject to the mortgages held by the complainant and Thurston. The proposal originally made by Staples, did not include these lots, and there is no proof that the Quin mortgage was referred to, or entered into the terms of the compromise or the consideration of the parties.

The compromise was carried into full effect, and Staples complied with its stipulations. His conveyance of these lots, vested them in fee in the Trust Fire Company, and it conveys them *subject in express terms, to the two mortgages to the complainant and Thurston.* All the testimony concurs in establishing that this language of the deed was intended, and was in accordance with the agreement of the parties.

Staples did not transfer, or, so far it appears, intend to transfer,

to the Trust Fire Company, any interest whatever in the Quin mortgage. If they have acquired any right or equity in that mortgage, it must be by operation of law.

Upon the conveyance of the lots to them, *they ceased to be creditors of Staples.* They became *purchasers* of the lots, the consideration of their purchase was a portion of the debt against Staples which they discharged, and they took the lots subject to the two mortgages held by Thurston and the complainant.

The clear effect of all this was, that the lots in question became the principal debtor to the complainant and Thurston; and as between Staples and the lots, or their new owners, The Trust Fire Company, Staples became a surety for the latter, in respect of the two mortgage debts. The Trust Fire Company did not become personally liable to pay those debts, but the lots in their hands became the primary fund for such payment, and to the extent of those lots, the company were the principal debtors upon the two mortgages, and Staples was their surety in respect of his liability on the two bonds. It is impossible to distinguish this case in principle, from *Jumel* v. *Jumel,* (7 Paige, 591,) and *Cox* v. *Wheeler,* (7 ibid. 248.) The same doctrine was asserted by Chancellor Kent, in *Tice* v. *Annin,* (2 J. C. R. 128;) and it has been enforced in many other reported cases since that time.

The authorities relied upon by the Trust Fire Company, are applicable to creditors, who having a lien upon one fund only, are entitled in equity to marshal the securities of a creditor having a prior lien upon the same fund, and having also an effective lien upon another fund or estate. And the error of the defendants has arisen from their continuing to regard Staples as their debtor, in respect of that portion of their debt which they forgave to him without any, or if any, for a nominal payment; instead of realizing that they had discharged him, and become the purchasers of his lots charged with the burthen of these mortgages.

The Trust Fire Company have no right to compel the application of the Quin mortgage to the complainants debt. On the contrary, Staples has an equity to compel the lots to be sold for the payment of that debt, so that the Quin mortgage may be restored to him.

I entertain no doubt whatever upon the question, and must make the usual decree for the complainant.